MAYAGÜEZ SUGAR COMPANY, INC., peticionaria, *v.* JUNTA AZUCARERA DE PUERTO RICO, recurrida.

Número 13.

*Sometido:* 5 de diciembre de 1955. *Resuelto:* 18 de enero de 1956.

888

*Fiddler, González & Nido,* abogados de la peticionaria; *Alejandro Romanace,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

A principios de julio de 1955 el colono Ramón Rufino Torres por conducto de la Junta Azucarera de Puerto Rico notificó a las partes afectadas su deseo de cambiar la molienda de sus cañas para la zafra de 1956 de la Central Rochelaise, propiedad de la Mayagüez Sugar Co., Inc., a la de la Central Igualdad. Se opuso por escrito a dicho cambio la Mayagüez Sugar Co., Inc., alegando que el colono Torres tenía contratada la molienda de sus cañas hasta el 1956 con la Central Rochelaise en virtud de un contrato vigente suscrito ante notario el 25 de junio de 1954. [1]

---

[1] Posteriormente en una comunicación dirigida a la Junta el colono Torres hizo constar que desconocía el término de vencimiento del contrato de molienda de cañas que tenía con la Mayagüez Sugar Co., Inc., y que

Después de celebrarse una vista en la que las partes presentaron prueba, la Junta desestimó la oposición al cambio de molienda formulada por la Mayagüez Sugar Co., Inc. En su resolución la Junta sostuvo que el contrato invocado por la opositora carecía de causa que le diera validez en vista de que la obligación asumida por la central en dicho contrato de moler las cañas del colono era una obligación impuéstale por la Ley núm. 426 de 13 de mayo de 1951 ((1) pág. 1139). Denegada la reconsideración de dicha resolución, la opositora interpuso el presente recurso de revisión.

█ Fundamentalmente la peticionaria sostiene que el contrato de refacción y molienda aquí envuelto "es uno válido en derecho, con causa lícita, y por tanto exigible su cumplimiento" y que "su pretendida anulación por la Junta recurrida menoscaba ilegalmente las obligaciones establecidas en dicho contrato, en violación de la Constitución del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de América." Sostiene además la peticionaria que la Junta Azucarera carece de poder o jurisdicción para entrar en la validez de un contrato entre central y colono a no ser que el mismo sea en contravención a las disposiciones expresas de la Ley Azucarera.

El contrato aquí envuelto no es de refacción agrícola y molienda de cañas, como erróneamente lo titularon los contratantes sino sencillamente un contrato de molienda. En virtud de dicho contrato el colono se obligó a entregar a la Central Rochelaise para su molienda las cañas que cultivara en una pequeña finca de cinco cuerdas con noventa y cuatro centavos de terreno, durante las zafras de 1954–55 y 1955–56. Por la cláusula "Tercera" la Central se compromete a facilitar al colono tres dólares ($3.00) por tonelada de caña que entregue en el batey de la central, como anticipo para corte y tiro. Este es el único anticipo que la central se compromete

---

por tanto desistía del cambio de molienda solicitado hasta tanto expirara el contrato; pero en la vista celebrada ante la Junta, Torres ratificó su deseo de cambiar la molienda de·sus cañas a la Central Igualdad si el susodicho contrato no se lo impedía.

a facilitar al colono. Tales anticipos según la cláusula Sexta del contrato, devengarán intereses al tipo de seis por ciento (6%) desde la fecha de sus respectivas entregas hasta la de su devolución. Y en lo que respecta a la siembra y cultivo de las cañas, la cláusula segunda del contrato, apartado $D$, dispone:

"$D$.—El Colono hará de su cuenta, cargo y riesgo con peculio propio, todos los gastos que requieran las plantaciones, desde la preparación del suelo hasta la entrega de la caña en la Central, y pasará a la Central, antes del primero de octubre de cada año una relación o nota de las cañas que supone habrá maduras en cada uno de los meses de la zafra subsiguiente, a fin de que la Central pueda hacer los arreglos necesarios para la ordenación de los cortes, transporte y molienda de las cañas, conforme a este contrato."

La central por su parte se obliga, según el apartado $G(a)$ de la misma cláusula "a pagar todos los gastos y costas de laborar dichas cañas hasta convertirlas en azúcar centrifugada". En otra cláusula el colono se obliga a destinar las cantidades que reciba de la central a la administración, sostenimiento, cultivo y mejoramiento de la finca comprendiendo los gastos para el corte, recolección y transporte de las cañas que la finca produzca. Pero las únicas cantidades que el colono recibe de la Central, bajo este contrato, son los $3.00 que le anticipa por tonelada de caña que entregue en el batey de la central, en adición desde luego, del producto de la liquidación de sus cañas. Resulta evidente que como afirmamos al principio, el contrato aquí envuelto es simplemente uno de molienda de cañas.

Por disposición expresa de la Ley Azucarera el contrato en cuestión es nulo e inexistente. Veamos.

La cláusula segunda, apartado $E$ dispone, que las cañas del colono serán pesadas en cualquiera de las romanas de la factoría obligándose los otorgantes a tener por exacto el peso que fije la misma romana pudiendo el colono presenciar el peso cuantas veces lo desee, y la central podrá hacer en el

peso de las cañas la rebaja proporcional y justa en defensa de sus intereses si el colono le enviare cañas de condiciones y clases inferiores a las señaladas en el contrato, sin que se entienda que la central se compromete a recibir tales cañas.

En primer lugar, el art. 3 de la Ley Azucarera impone a la central la obligación de moler las cañas del colono independientemente de la clase o variedad de caña que el colono produzca y cualquier pacto en contrario es nulo. En segundo lugar, el pacto que faculta a la central para hacer ella una rebaja proporcional en el peso de cañas cuando el colono le entregue cañas en condiciones y clases inferiores a las estipuladas en el contrato, es contrario a las disposiciones del art. 5 de la Ley Azucarera que fija la participación mínima del colono en los azúcares que produzcan sus cañas, a menos que la Junta fije una participación distinta para los colonos si a su juicio se justificare un cambio en dicha participación mínima.

En el apartado $K$ de la misma cláusula segunda del contrato se estipula que en caso de que ocurriesen incendios en las cañas del colono, la Central les dará preferencia sobre todos los demás para su molienda. "El precio de estas cañas será regulado por la central según su estado." Esta cláusula también es contraria a las disposiciones legales sobre la participación mínima de los colonos en los azúcares que produzcan sus cañas. Nótese que esta cláusula habla del *precio de la caña*, lo que aparentemente significa que la central pagará un precio por dichas cañas según ella lo determine. Esto podía privar al colono de la participación mínima en el producto de sus cañas que la ley le garantiza.

El contrato contiene otras cláusulas que son contrarias a la Ley Azucarera. Por ejemplo, en la cláusula segunda, $G(b)$, se establece un método distinto al establecido en los arts. 4 y 5 de la Ley Azucarera para la determinación del rendimiento de azúcar de 96 grados de polarización de las cañas entregadas por el colono y para la liquidación de dichas cañas. En el apartado $H(a)$ la central se reserva el derecho

de suspender temporalmente el corte de las cañas si el guarapo de éstas de acuerdo con el análisis químico contuviese menos del trece por ciento de sucrosa y resultare con menos de ochenta de pureza. En el apartado $K$ se conviene que la central no tiene la obligación de recibir cañas que no estén maduras y que no tengan cuando menos ocho grados del decímetro Beaumé. Y por último, en el apartado $P$ se estipula que cualquier duda que haya entre la central y el colono en cuanto a la intención y cumplimiento del contrato será decidida por dos árbitros, nombrados por cada parte, y no habiendo conformidad entre los árbitros, cada árbitro nombrará tres personas y dentro de estas seis un árbitro será sorteado, cuya decisión será válida. Contrario a este convenio, la Ley Azucarera, en su art. 15 faculta a la Junta Azucarera para resolver cualquier controversia que surja entre colonos y centrales.

Todos estos pactos, por ser contrarios a la ley, producen la nulidad e inexistencia del contrato. A este efecto, el art. 34 de la Ley Azucarera dispone:

"Artículo 34.—Todo contrato o práctica, hecho o implantado, después que entre en vigor esta Ley, en contravención de las disposiciones del presente estatuto, o de las órdenes. reglas o reglamentos de la Junta, será nulo e inexistente.

"Cualquier contrato o convenio entre una central y uno o más colonos en virtud del cual el colono haya convenido o convenga en aceptar una participación en los azúcares y mieles que produzcan sus cañas, o una compensación por concepto de arrastre y arrimo, menor a las fijadas por esta Ley o que fije la Junta, será nulo e inexistente."

Para determinar la validez del contrato que estudiamos no tenemos que recurrir a las disposiciones del Código Civil. La propia Ley Azucarera, según hemos visto, declara nulo e inexistente todo contrato hecho con posterioridad a la vigencia de dicha ley, en contravención de sus disposiciones. Además hemos analizado algunas de las cláusulas del contrato en las que el colono parece convenir en aceptar una participación en los azúcares que produzcan sus cañas menor a la

fijada por ley. En ese caso, el contrato es nulo e inexistente según lo declara el segundo párrafo del art. 34 arriba transcrito.

■■ Siendo nulo e inexistente el contrato aquí envuelto la Resolución de la Junta no viola la cláusula constitucional de los contratos. *Corporación Azucarera Saurí & Subirá* v. *Junta Azucarera*, 77 D.P.R. 397.

Por último consideramos que el art. 15([2]) de la Ley Azucarera faculta a la Junta para resolver la controversia que ha surgido entre la recurrente y el colono Ramón Rufino Torres. Así lo hemos decidido, sub silencio en el caso de *Corporación Azucarera Saurí & Subirá* v. *Junta Azucarera*, supra. Véanse además los casos de *A. Roig Sucrs.* v. *Junta Azucarera*, 77 D.P.R. 342; *Eastern Sugar Associates* v. *Junta Azucarera*, 77 D.P.R. 358, 374; *Colonos de Santa Juana* v. *Junta Azucarera*, 77 D.P.R. 392.

*La resolución de la Junta será confirmada.*

El Juez Asociado Sr. Sifre no intervino.

---

([2]) Dicho artículo dispone:

"Artículo 15.—La Junta Azucarera tendrá amplias facultades para oír y decidir cualquier controversia que surja bajo los términos de esta Ley y/o las reglas y reglamentos u órdenes que dictare, así como cualquier otra controversia que surja entre colonos y centrales.